**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**CHIEFTAIN ROYALTY COMPANY, )**
**)**
**Plaintiff, )**
**)**
**v. ) No. CIV-11-212-R**
**)**
**QEP ENERGY ENERGY COMPANY, )**
**)**
**Defendant. )**

**ORDER**

This matter comes before the Court on the Motion for Class Certification, filed by Plaintiff, Chieftain Royalty Company. Defendant QEP Energy Company responded to the motion. The Court conducted a hearing on January 30, 2012, and after considering the parties' oral and written submissions, including their supplemental authorities, the Court finds as follows.

Plaintiff owns mineral rights in Oklahoma gas wells where Defendant serves as operator, or from which Defendant, as non-operator, separately marketed production. Plaintiff alleges Defendant used its position as operator or marketing working interest owner to (1) secretly underpay royalty due to royalty owners, including deducting direct and indirect fees for marketing, gathering compression, dehydration, processing, treatment; (2) not pay royalty on wellhead gas used off the lease premises or in the manufacture of products; and (3) not pay royalty on condensate that dropped out of the gas stream. Plaintiff seeks damages and injunctive relief based on claims of: (1) breach of contract; (2) tortious breach of contract; (3) breach of fiduciary or quasi-fiduciary duty; (4) fraud, actual and

constructive, and deceit; (5) conversion; (6) conspiracy; and (7) accounting. The Court previously granted Defendant judgment on the pleadings with regard to Plaintiff's claims of tortious breach of contract and conversion. Plaintiff advocates for certification of a class with regard to all of its claims. Defendant concedes that class treatment might be appropriate on some level, but argues that the state-wide class sought by Plaintiff is inappropriate[1] and that not all claims are appropriate for class treatment.

As the party seeking class certification, Plaintiff has "a strict burden of proof" to establish that the putative class meets the requirements of Rule 23. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)(citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)). Plaintiff must first satisfy the four prerequisites of Rule 23(a) by showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) Plaintiff's claims or defenses are typical of the claims or defenses of the class; and (4) Plaintiff will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation. If the requirements of Rule 23(a) are met, Plaintiff must then show that its case fits within one of the categories described in Rule 23(b), in this case Rule 23(b)(3).

[1] At the hearing defense counsel argued for field-by-field determinations. He asserted there are fifty different fields in Oklahoma and that because the processing of the gas and the need for such processing is generally the same in any field, that a field-by-field analysis would be necessary and thus serve as a better basis for defining of a class. Defendant also requests that the Court limit the class to lessors with whom it has a contractual relationship.

In its motion for certification Plaintiff proposed the class be defined as follows:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where QEP Energy Company, including its predecessors, successors and affiliates, is or was the operator (or, as a non-operator, QEP separately marketed gas). This Class Claims relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.
>
> The persons or entities excluded from the Class are (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; (3) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; (4) members of the class certified in *Naylor Farms v. Anadarko OGC Co.*, No. CIV-08-668-R, 2009 U.S. Dist. LEXIS 127516 (W.D.Okla. Aug. 26, 2009), but only to the extent of their respective royalty interests in wells operated by QEP in Beaver and Texas counties, Oklahoma; and (5) members of the class certified in *Bridenstine v. Kaiser Francis*, Case No. CJ-2001-1, District Court of Texas County, Oklahoma CIV APP, Case No. 97,117 (unpublished) August 22, 2003, *cert. denied*, June 26, 2006, Okla. Sup. Ct., Case No. DF-01569, but only to the extent of their respective royalty interests in wells connected to the Beaver Gathering System in Beaver and Texas counties, Oklahoma.

**Numerosity**

According to Plaintiff's expert, Barbara Ley, Defendant QEP's pay deck information for a recent month indicated payments to in excess of 5000 royalty owners.[2] The fact of such a large number does not itself provide a basis for certification. *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Rather, Plaintiff must establish "that the class is so numerous as to make joinder impracticable." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th

[2] Plaintiff does not attempt to identify how many of those owners were members of the Plaintiff classes in either *Bridenstine* or *Naylor Farms*, or how many might be publicly traded oil and gas exploration companies or their affiliates.

Cir. 2006). Defendant does not challenge Plaintiff's allegations as to numerosity, and the Court finds that 5,000 royalty owners, even if it becomes necessary to carve out some royalty owners specifically excluded from the class, is a sufficiently large number such that joinder of each member would be impracticable.

**Commonality**

Plaintiff must next establish commonality, which Defendant contends it has failed to do, citing to the standard set forth in *Wal-mart v. Dukes*, --- U.S. ---, 131 S.Ct. 2541, 251 (2011). Defendant contends *Dukes* raised the threshold for commonality analysis, and that Plaintiff cannot meet this heightened standard.

> Commonality requires the plaintiff to demonstrate that the class members “have suffered the same injury,” [*General Telephone Company*] *v. Falcon*, [457 U.S. 147, ] 157, 102 S.Ct. 2364. [The] common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Dukes*, --- U.S. ---, 131 S.Ct. at 2551. Defendant contends that Plaintiff cannot properly rely on pre-*Dukes* cases, because those cases generally do not focus on the requisite common answer issue required by the Supreme Court in *Dukes*. Defendant further contends that Oklahoma law requires an individualized examination on the issue of marketability, *i.e.* with regard to different types of costs, and therefore, there is no "one-size-fits all answer" to the issues raised in this case. Response to Motion to Certify, p 9.

Considering Plaintiff's claims in turn, the Court concludes that certification is appropriate for certain claims, because there are common questions with common answers,

and inappropriate for other claims. The Court begins with Plaintiff's breach of contract claim. The evidence establishes that Plaintiff is a lessor and Defendant has succeeded to the interest of the original lessee in at least one well, and as a result, Defendant pays Plaintiff royalty. The evidence further establishes that Defendant generally utilizes the same formula in calculating payments to royalty owners, regardless of lease language regarding deductions. For percentage of proceeds sales contracts, Defendant contends that title to the gas is transferred to the buyer at the wellhead, and Defendant pays royalty in accordance with the POP contract, on the full amount received from the buyer when the gas is resold at the tailpipe. Although Defendant denies it takes deductions, there is no dispute that royalty owners' payments are calculated as a percentage of the amount received by the Defendant under the POP rather than on the gross sales price of the gas at the tailpipe. *See Naylor Farms*, Case No. 08-668 Doc. 220 (W.D.Okla. Aug. 24, 2011)("A lessee may certainly hire or pay a third party to process the gas . . . [h]owever, the costs of such processing are not chargeable to the royalty interest if the processes are necessary to make the gas marketable. . . .").[3] The common question here, as in prior cases certified by the Court is whether Defendant either took inappropriate deductions or sold gas at a lesser price to a midstream company in exchange for the processing thereof and paid royalty on the net value of the gas rather than its gross value. Although ultimately the Court may determine sub-classes are necessary or desirable to assist in management of the class, the mere fact of differences in

[3] Defendant is perhaps not "paying" for the processing of the gas, but the percentage of the proceeds from the final sale reflect the activities of the buyer required to gather, compress, dehydrate and transport the gas.

the gas and the actual marketing arrangements for any particular well or wells does not preclude class certification on the basis of commonality. The common question will yield common answers; whether Defendant took deductions or otherwise passed processing costs on to royalty owners, and did Defendant do so inappropriately. Accordingly, the Court finds Plaintiff's breach of contract claim is subject to certification.[4]

The same holds true with regard to Plaintiff's claims for breach of fiduciary or quasi-fiduciary duty. The parties are well aware of the Court's extant decisions regarding the existence of the fiduciary duty of an operator to the lessors in a well.[5] Again, although there will be subclasses, divided by Defendant's role as operator or non-operator selling production, within the appropriate subclass the common question, *i.e.*, did Defendant breach a fiduciary duty, will have a common answer because the parties in the subclasses will stand in the same positions relative to one another. Defendant was either a fiduciary by virtue of its operator status or not a fiduciary because it was not an operator and was merely selling production. Additionally, the allegations of underpayment of royalty extend across the class, regardless of whether any particular member of the class had a contractual relationship with the Defendant, because to the extent payment into a royalty pool for any royalty owner was

---

[4] Subclasses will be necessary for Plaintiff's breach of contract claim, because Defendant does not have a direct contractual relationship with every royalty owner. To the extent the Defendant does not have a lessor-lessee relationship with a member of the class, that class member and others similarly situated would have unjust enrichment claims rather than breach of contract claims.

[5] The Court's prior orders in other similar cases did not rely on the existence of a lessor-lessee relationship between Plaintiff royalty owners and the Defendant operator. Rather, the Defendant's status as operator gives rise to a fiduciary duty between it and all lessors in the well, even those with whom Defendant has no contractual relationship.

at a lesser amount than mandated by a lease and/or Oklahoma law, the entire pool and all participants in the pool would have been paid less than the amount to which they were entitled. Accordingly, Plaintiff's motion to certify is granted with regard to its breach of fiduciary duty claim.

Plaintiff also pled a claim for fraud. The Court has previously declined to certify claims of fraud with regard to the alleged underpayment of oil and gas royalty. *See Naylor Farms v. Anadarko OGC Co.*, Case No. CIV-08-668-R, *Hill v. Marathon Oil Co.*, Case No. Civ-08-37-R, and *Hill v. Kaiser-Francis Oil Co.*, Case No. CIV-09-07-R. The Court's prior decisions were premised on the element of reliance, because a Plaintiff seeking to recover under a theory of fraud in Oklahoma must establish individual reliance. In response to the Court's orders in prior cases and in support of its position that certification is appropriate in this case, Plaintiff cites to *Weber v. Mobil Oil Corp.*, 243 P.3d 1 (Okla. 2010).

The Court finds *Weber* distinguishable on its facts, because as noted by the *Weber* court, "potential weaknesses in fraud claims will not serve as grounds for refusal to certify a class and that where standardized written misrepresentations have been made to class members, class certification is appropriate." *Id.*, at 5-6. In *Weber*, Mobil, in seeking approval for a plan of unitization, sent a letter to royalty owners stating that the royalty owners' "interest would be free and clear of any operating and investment costs." *Id.* at 3. The letter was sent to all royalty owners and Mobil thereafter proceeded to charge royalty owners for that which it promised would not be charged. Although the Oklahoma Supreme Court concluded the fraud claims in that case could be certified, this Court finds in this case

that fraud should not be part of the certified class. First, the representations made to the royalty owners in this case does not include the unequivocal and identical statement made to all royalty owners in *Weber* that they would bear no costs. Although Plaintiffs argue that the undisclosed deductions in this case are tantamount to the representations in *Weber*, the Court disagrees. Furthermore, because the composition of the class members remains unknown in this case, issues of reliance may differ between members of the class. No publicly traded oil and gas exploration companies will be members of the class, however, that does not mean that there will not be persons who had knowledge prior to the filing of this lawsuit about the issues herein. For example, Plaintiff is a royalty company, although it contends it did not have knowledge of allegedly improper deductions until just before this suit was filed, that does not mean that other royalty companies that might be class members did not. Additionally, in light of the spate of royalty litigation since *Bridenstine v. Questar Exploration and Production*, the Court cannot conclude that there are not class members in this action who did not have recovery in either *Bridenstine* or notice of the class action in *Naylor Farms* that should have been put on notice of the potential for a claim, such that continued reliance on check stubs was unreasonable.[6] Accordingly, the Court, for the reasons set forth above, adopts its prior precedent as set forth in *Naylor Farms*, *Hill v. Marathon*, and *Hill v. Kaiser Francis*; Plaintiff's request to certify its fraud claim for class action treatment is denied.

---

[6] The class members in *Naylor Farms*, which could include members of the instant class, received notice of that action sometime near October 14, 2009, which would raise issues regarding both reliance for fraud claims, and statute of limitations issues.

The Court further finds that Plaintiff's conspiracy claims are not amenable to class certification. First, from the review of the petition the Court is unable to determine the number or identity of the alleged co-conspirators. The Court is further unable to discern the exact nature of the relationship between Defendant and its alleged co-conspirators. Absent some identification of the scope and the manner of the alleged conspiracies, the Court is unable to conclude that Plaintiff has met is burden of establishing that the conspiracy claims meet the commonality requirement of Rule 23.

Finally, to the extent Plaintiff intends to attempt to prove that Defendant "failed to make diligent efforts to secure the best terms available for the sale of gas and its constituents from the Oklahoma wells" petition, p. 5, such claims are not amenable to class certification, because in assessing whether the best efforts were used the Court would be required to consider the quality and quantity of production from each well and the market conditions at the time of sale in order to assess liability, if any. Given the number of wells at issue in this case, the Court concludes that such a claim lacks commonality.

Plaintiff's claims for breach of contract and breach of fiduciary duty are sufficient to establish the commonality element requirement by Rule 23.[7] Accordingly, with regard to these claims, the Court turns to the remaining requirements of Rule 23.

**<u>Typicality</u>**

---

[7] Plaintiff also addresses what it contends are its claims for unjust enrichment. Review of the petition in this case reveals that Plaintiff did not plead a separate claim for unjust enrichment. Rather, Plaintiffs allege that Defendant was unjustly enriched as a result of its allegedly improper actions, ¶ 25, ¶ 27, as part of its claims for breach of contract, ¶ 33, breach of fiduciary duty, ¶ 39, fraud, ¶ 43, its conversion claim, ¶ 47, and its conspiracy claim, ¶ 51.

"The first two prerequisites of Rule 23, joinder impracticability and common questions, focus on characteristics of the class. Taken as a unit, they form the core of the class-action concept. The second two prerequisites, typicality and adequate representation, focus instead on the desired characteristics of the class representative." Newberg on Class Actions, § 3:13. The typicality requirement limits the class claims to those "fairly encompassed" by the claims of the named plaintiffs. *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980). Claims may be typical without being identical such that "typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *In re Four Seasons Securities Laws Litigation*, 59 F.R.D. 667, 681 (W.D.Okla.1973), *rev'd on other grounds*, 502 F.2d 834 (10th Cir.1974) (citation omitted).

Defendant does not challenge Plaintiff's ability to establish that its claims are typical, other than noting that in *Watts v. Amoco Prod. Co.*, Case No. 98,782 (Okla.Civ.App. Sept. 14, 2004), the district court refused to certify a class because the requirements of typicality, predominance, and superiority were not met. The Court agrees that when the representatives are subject to unique defenses that predictably will become a major focus of litigation then class certification should be denied. *Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 180 (2nd Cir.1990); *Koos v. First National Bank*, 496 F.2d 1162, 1164 (7th Cir.1974). The Court finds, however, that the potential individual issues that may arise in this case do not render Plaintiff's claims atypical of the class nor does the need for

subclasses render Plaintiff's claims atypical.

**Adequacy**

The final Rule 23(a) requirement is that the named Plaintiff and its counsel must establish that they will adequately represent the class. Defendant does not challenge the adequacy of the nominated class representative or counsel. “Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?” *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (10th Cir. 1998)).

In an affidavit Robert Abernathy, president of Chieftain RoyaltyCompany, represents that the company, a royalty owner in wells operated by Defendant, is willing and able to serve as representative of the class. Jack Lancet, who is not currently a named plaintiff, also seeks to be appointed as class representative. He contends he is a royalty owner in wells operated by Defendant. Neither man indicates the presence of any conflicts with the class. The Court concludes that Plaintiff has presented sufficient evidence to establish its adequacy and the adequacy of Jack Lancet as named plaintiffs.[8]

Furthermore, there is no dispute that counsel for Plaintiff has successfully prosecuted

[8] From the Court's perspective the most appropriate method for adding Mr. Lancet would be via amendment of the petition to include him as a named Plaintiff. Plaintiff should additionally amend its class definition to comport with the definition quoted above and set forth in the Plaintiff's motion for certification, which differs, albeit not significantly, from the class definition originally pled in this case. Plaintiff is not permitted to otherwise amend the pleadings without leave of Court.

other class actions and complicated litigation, including litigation involving the alleged underpayment of royalty. Accordingly, the Court finds that Plaintiff's counsel also has satisfied the adequacy of representation prong.

**Rule 23(b)**

The Court must now determine whether Plaintiff has established that this action qualifies for class certification under Fed.R.Civ.P. 23(b)(3), which permits maintenance of a class action if, in addition to the requirements of Rule 23(a), "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The issue of predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 623 (1997)(citing 7A Wright, Miller, & Kane 518-19). "Predominance is normally satisfied when plaintiffs have alleged a common course of conduct on the part of the defendant." *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, 2009 WL 2137224 *(E.D.Pa. 2009)*(citing *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 148 F.3d 283 (3d Cir. 1998); *Barel v.. Bank of Am.*, 255 F.R.D. 393, 399 (E.D.Pa.2009)).

> The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3).

As set forth above, the issue with regard to each of the royalty owners in the putative class is whether they received the full amount of royalty to which they were entitled, that is were deductions taken, either directly or indirectly, in violation of their rights. Although there may be some variation in lease language, the variation is not determinative, largely because the decision herein will focus on what is required in Oklahoma to make gas marketable and what costs, if any, for rendering gas marketable, may be shifted from Defendants to the royalty owners. The minimal impact of the lease language issue was conceded by Defendant at oral argument, when counsel agreed that if there are any leases in a unit that have the implied duty to market, all royalty owners in that unit should be part of a certified class, because all royalty owners share in the pool of payments. In essence, shorting the pot shorts everyone who shares the proceeds of the royalty pot. Thus, regardless of lease language, at this juncture Plaintiff has established that common issues predominate.

Furthermore, litigating the rights of the various royalty owners in one case is likely desirable to individual royalty owners who would have little motivation to pursue individual litigation. The benefits due to any single royalty owner are likely worth significantly less than the costs incurred to make a recovery. Although there have been class action suits filed against Defendant for certain Oklahoma counties, those counties have been carved out of this action, and it appears this action will determine with regard to most remaining royalty owners whether Defendant made the proper payment of royalties on its Oklahoma wells. The use of a tribunal located in Oklahoma is desirable because the wells at issue are located within the State, which serves as situs for the dispute. Although not all royalty owners are

Oklahoma residents, this does not render Oklahoma an unsuitable jurisdiction to consider this case.[9] The members of the class should be easily identifiable based on the payment records of the Defendants.[10] Finally, although the class in this case is alleged to be large, the parties' submissions do not indicate to the Court that the class would be unmanageable. As a result, the Court finds that common issues predominate over individual ones, and there is justification for handling the dispute on a representative basis. Resolving this issue for all royalty owners of wells operated by Defendant or from which Defendant sold production in Oklahoma, save for those counties from which litigation has already ensued, ensures the royalty owners continue to be treated the same, where appropriate under the terms of their respective leases.

Finally, Defendant argues that those royalty owners whose interests are force pooled should not be part of the class. Plaintiff argues that forced pooled owners are appropriately part of the class for the same reason that leases with deduct language are part of the class. The parties' arguments regarding forced pooled owners are not as well briefed as other issues in this case. However, because forced pool owners may be entitled to share in proceeds owed to royalty owners in units operated by Defendant or from which Defendant sold

[9] Non-Oklahoma resident royalty owners would have little incentive to pursue litigation on an individual basis in a foreign jurisdiction because their costs would be even higher than the costs of resident royalty owners.

[10] To the extent Plaintiff is making a claim for QEP's failure to fulfill its duty to timely pass on royalty paid by non-operators who separately market their gas, reply brief, p. 15, the Court declines to certify a class. The alleged delay in payment presents an entirely distinct type of claim from the alleged underpayment of royalty owed by Defendant, and the Court concludes expansion of the class in this regard is unwarranted in the present action.

production, the Court declines at this time to exclude force pooled owners from the class.

Plaintiff's motion for certification is granted in part, as set forth above. However, in light of the need for subclasses with regard to certain of Plaintiff's claims, again, as set forth above, Plaintiff is hereby ordered to submit a revised class definition, within ten days of entry of this order, reflective of the subclasses noted above. Defendant shall have five days to respond to Plaintiff's proposed amended class definition.

IT IS SO ORDERED this 16th day of March, 2012.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE