## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHIEFTAIN ROYALTY COMPANY and** | ) | |
| **JACK LANCET,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No.  CIV-11-212-R** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **QEP ENERGY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### SECOND AMENDED COMPLAINT

COME NOW, Plaintiffs, Chieftain Royalty Company ("Chieftain"), and Jack Lancet ("Lancet") (together, "Plaintiffs"), for themselves and all others similarly situated (hereinafter Plaintiffs and Class members are collectively referred to as the "Class"), and for their cause of action against Defendant QEP Energy Company (formerly Questar Exploration and Production Company) ("QEP") allege and state as follows:

### VENUE AND JURISDICTION ALLEGATIONS

1.     Chieftain Royalty Company is an Oklahoma corporation with its principal place of business in the State of Oklahoma.

2.     Lancet is a citizen and resident of Oklahoma.

3.     QEP Energy Company is a foreign corporation with its principal place of business in Texas.

4.     Plaintiffs and the other Class members are residents of various states, including the State of Oklahoma.  Their claims arose in Dewey County and various other counties in Oklahoma.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a).[1]  The amount in controversy exceeds the sum of $75,000.00, and this is an action between citizens of different states.

6.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2).   The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this is a class action in which at least one member of the class is a citizen of a state different from any defendant.

7.     This Court has both specific and general jurisdiction over Defendant. Defendant engages in continuous and systematic activities within the State of Oklahoma. These activities include operating wells in Oklahoma from which the Class claims arise.

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391.  Specifically, as provided by 28 U.S.C. §1391(c), Defendant is a corporation that is deemed to reside in this District.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## CLASS ACTION ALLEGATIONS

The Allegations set forth above are incorporated herein by reference.

_____

[1] Defendant removed this action from the District Court of Dewey County to this Court on February 28, 2011 pursuant to the Class Action Fairness Act.  *See* Notice of Removal (Docket No. 1).

9.     Plaintiffs bring this action as the representative of a Class pursuant to 12 O.S. §2023(b)(3).  Pursuant to the Court's Order of March 16, 2012, as clarified and amended by the Court's Order on April 5, 2012, the Court certified the following "Class":

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where QEP Energy Company is or was the operator (or, as a non-operator, QEP separately marketed gas). The Class Claims relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.  The Class is divided into the following subclasses:
>
> Subclass 1:   All Class members who have or had a direct lessor-lessee relationship with QEP
>
> > Subclass 1(a):     where QEP is or was the Operator of Oklahoma wells.
> >
> > Subclass 1(b):     where QEP, as non-operator of Oklahoma wells, separately marketed gas.
>
> Subclass 2:   All Class members who do not or did not have a direct lessor-lessee relationship with QEP
>
> > Subclass 2(a):     where QEP is or was the operator of the Oklahoma wells.
> >
> > Subclass 2(b):     where QEP, as non-operator of Oklahoma wells, separately marketed gas.
>
> The persons or entities excluded from the Class are:  (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies

3

and their affiliates; (3) the claims of royalty owners to the extent previously released by settlement in the case styled *McIntosh v Questar,* Case No. CJ-02-22, District Court for Major County; (4) members of the class certified in *Bridenstine v. Kaiser Francis*, Case No. 97, 117 (unpublished) August 22, 2003, cert. denied, June 26, 2006, Okla. Sup. Ct., Case No. DF-01569, but only to the extent of their respective royalty interests in wells connected to the Beaver Gathering System in Beaver and Texas counties, Oklahoma; (5) members of the class certified in *Naylor Farms v. Anadarko OGC Co.*, No. CIV-08-668-R, 2009 U.S. Dist. LEXIS 127516 (W.D. Okla. Aug. 26, 2009), but only to the extent of their respective royalty interests in wells operated by QEP in Beaver and Texas counties, Oklahoma; and (6) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

10.     The Class numbers more than a thousand members; the members reside in several different states; and the Class is so numerous and spread out across the United States that joinder of all members is impracticable.

11.     QEP is or was an owner of extensive oil and gas leasehold interests within the State of Oklahoma, where QEP as a well operator (and as a non-operator) has marketed gas from many wells in the State of Oklahoma (the "Oklahoma Wells").

12.     The averments of fact and questions of law herein are common to the Class.

13.     Plaintiffs are mineral interest owners in Oklahoma Wells where QEP was the operator or where QEP, as a non-operator, separately marketed production from wells.  Plaintiffs' claims are typical of the Class' claims.

14.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class.  Plaintiffs are represented by counsel both skilled and experienced in oil and gas accounting and

complex civil litigation matters, including oil and gas class actions.  Plaintiffs' counsel is accustomed to handling substantial litigation matters.  The Court certified Plaintiffs' counsel as Class Counsel in its Order of March 16, 2012.

15.     The averments of fact and questions of law herein, which are common to the members of the Class, predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

(a)     The questions of law and fact are so uniform across the Class that there is no reason why individual Class members would want to control the prosecution of their own actions, at their own expense;

(b)     To Plaintiffs' knowledge, there is no pending litigation against QEP that incorporates the statewide claims of improper deductions from mineral interest proceeds related to the Class wells;

(c)     The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

(d)     The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member, and not just those who can afford to bring their own actions; and,

(e)     QEP has fraudulently concealed its actions, which give rise to the Class members' cause of action.  Many of the Class members may never discover the wrongful acts of QEP.  Thus in the absence of a class action, QEP, through its

concealment, may successfully be unjustly enriched to the detriment of the unknowing Class members.

## BACKGROUND FACTS AND CLAIMS

16.     Based on information and belief, QEP used its position as operator and as an oil and gas working interest owner to secretly underpay royalty due Plaintiffs and Class members on production of gas and its constituents from the Oklahoma Wells.  QEP accomplished this by various improper deductions and reductions from royalty payments including, but not limited to, the following: (1) deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment, and other similar services; (2) not paying royalty on wellhead gas that was used off the lease premises or in the manufacture of products; and (3) not paying royalty on condensate that dropped out of the gas stream (hereinafter referred to as "Fees").  These Fees were incurred to transform raw wellhead gas into marketable condition for sale.

17.     The relationship between QEP and Chieftain and/or Lancet is contractual in nature by virtue of direct lease agreements between them in most cases.  However, there are a few situations where the relationship between Chieftain and QEP is based on Chieftain being a force pooled royalty owner.  Where there is not a direct lessor/lessee relationship between QEP and other Class members, Class members are still receiving royalty as royalty owners in the well where QEP is separately marketing gas as an

operator or as a non-operator of the well. The individual wells where these relationships exist are more particularly described below:[2]

1. **QEP: LANCET 1-17** - SW/4 – completed 3/28/1997
2. **QEP: REED 3-17** – SE/4 – completed 6/15/2001

**QEP-Lancet Relationship: Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT: The Lancet 1-17 and Reed 3-17 wells are located in §17-14N-15W – Custer Co., OK.
- OPERATOR: QEP
- OCC DRILLING & SPACING ORDER: 120632 – 640 - Gas
- GAS MARKETING: QEP markets gas for itself and others as the well operator and pays the royalty pool for the Lancet 1-17 well (one take-in-kind owner) and the Reed 3-17 well (two take-in-kind owners).
- OGL DATE: 9/10/71
- OGL RECORDED: Book 267, Page 443 - **Exhibit "1"**
- DESCRIPTION: SW/4 - §17-14N-15W, Custer Co., OK
- ORIGINAL LESSOR: Harold Lancet and Eileen Lancet, h/w
- CURRENT LESSOR: Jack Lancet by final decree from the estate of his father, Harold Lancet
- OGL ORIGINAL LESSEE: LVO Corporation
- CURRENT LESSEE: QEP owns all or a part of the original lessee's interest by virtue of various assignments
- OGL GAS ROYALTY CLAUSE: To pay lessor for gas of whatsoever nature and kind produced and sold or used off the premises, or used in the manufacture of any products therefrom, one-eighth (1/8) at the market price at the well for the gas sold, used off the premises, or in the manufacture of products therefrom

3. **QEP: COOPER-JOHNSON 1** – SE/4 NW/4 SE/4 – completed 11/1/1946
4. **QEP: BONNER 1-1** – SW/4 SW/4 – completed 6/15/2006
5. **QEP: YOUNG 1-1** – SW/4 SE/4 SW/4 – completed 8/14/2007

---

[2] A portion of the following information is pled upon information and belief based on Defendant's responses to Plaintiffs' requests and has not been independently verified by Plaintiffs.

**QEP–Chieftain Relationship:  Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT: The Cooper-Johnson 1, Bonner 1-1, and Young 1-1 wells are located in §1-2N-8W– Stephens Co., OK.
- OPERATOR: QEP
- OCC DRILLING & SPACING ORDER:  70319 – SU 80 - Oil
- GAS MARKETING: QEP markets gas for itself and others as the well operator and pays the royalty pool for the Bonner 1-1 well (with one take-in-kind owner) and the Young 1-1 well (with no take-in-kind owner).  The Cooper-Johnson 1 well is an oil well with no gas production.
- OGL DATE:  3/21/1946
- OGL RECORDED:  Book 356, Page 428 - **Exhibit "2"**
- DESCRIPTION:  Lots 6 & 7 and the E/2 SW/4 & W/2 NW/4 SE/4 & SE/4 NW/4 SE/4 & SW/4 SE/4 & W/2 SE/4 SE/4  - §1-2N-8W, Stephens County, OK
- ORIGINAL LESSOR:  I.R. McQueen and Jasmine I. McQueen h/w
- CURRENT LESSOR:  Chieftain owns all or a part of the minerals subject to this Lease by virtue of various mineral conveyances.
- OGL ORIGINAL LESSEE:  A.H. Mahnker.
- CURRENT LESSEE: QEP owns all or a part of the original lessee's interest by virtue of various assignments.
- OGL GAS ROYALTY CLAUSE:  2nd. To pay lessor for gas from each well where gas only is found, the equal one-eighth ($1/8^{th}$) of the gross proceeds at the prevailing market rate, for all gas used off the premises, said payment to be made monthly.
  3rd. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casing-head gasoline or dry commercial gas, one-eighth (1/8) of the proceeds, at the mouth of the well, at the prevailing market rate for the gas during which time such gas shall be used, said payments to be made monthly.

6. **QEP:  BEAM 1-24** -  SE/4 SE/4 - completed: 2/14/1987
7. **QEP:  WATSON 1-24 –** NE/4 SW/4 SE/4 SE4 **-** completed:  8/5/2000
8. **QEP:  MCCARTY 1-24 –** SW/4 SE/4 SE/4 **-** completed: 7/11/2008

**QEP–Chieftain Relationship:  Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT:  The Beam 1-24, Watson 1-24 and McCarty 1-24 wells are located in §24-8N-19E – Haskell Co., OK.
- OPERATOR: QEP

- OCC DRILLING & SPACING ORDER:  Beam 1-24 – 29915 – 640 – Gas; Watson 1-24 – 439386 – 160 – Gas; McCarty 1-24 – 553489 – 640 – Gas
- GAS MARKETING:  QEP markets gas for itself and others as the well operator and pays the royalty pool for the Beam 1-24, Watson 1-24 and McCarty 1-24 wells.
- OGL DATE:  7/15/1950
- OGL RECORDED:  Book/Page 150/445 - **Exhibit "3"**
- DESCRIPTION:  SW/4 SW/4 - §24-8N-19E – Haskell Co., OK
- ORIGINAL LESSOR:  Frank Harris and Susan Harris, h/w
- CURRENT LESSOR:  Chieftain owns all or a part of the minerals subject to this Lease by virtue of various mineral conveyances.
- OGL ORIGINAL LESSEE:  M.P. Thomas
- CURRENT LESSEE: QEP owns all or a part of the original lessee's interest by virtue of various assignments.
- OGL GAS ROYALTY CLAUSE: The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product as royalty 1-8 (sic) of the market value of such gas at the mouth of the well; if said gas is sold by the lessee, then as royalty 1-8 (sic) of the proceeds of the sale thereof at the mouth of the well.  The lessee shall pay lessor as royalty 1-8 (sic) of the proceeds from the sale of gas as such at the mouth of the well where gas only is found.

9.  **CIMAREX:  MAIB 1-20H -** SW/4  SW/4  S/W4 – completed: 6/22/2009

   **QEP–Chieftain:  Direct Lessor-Lessee Relationship by assignment of original lessor and lessee.**

- UNIT: The Maib 1-20H well is located in §20-14N-10W – Canadian Co., OK.
- OPERATOR: QEP
- OCC DRILLING & SPACING ORDER:  548203 – 640 - Gas
- GAS MARKETING:  Cimarex markets QEP's share of gas in the Maib 1-20H well.
- OGL Date:  1/6/94
- OGL RECORDED:  Book 1861, Page 830 - **Exhibit "4"**
- DESCRIPTION:  Lots Three (3), Four (4) and Ten (10) and the W/2 NW/4 - §20-14N-10W, Canadian Co., OK
- ORIGINAL LESSOR:  Brooks D. Phillips, Trustee of the Larue D. Dawson Trust B
- CURRENT LESSOR: Chieftain owns all or a part of the minerals subject to this Lease by virtue of various mineral conveyances.

- OGL ORIGINAL LESSEE:  Brigham Oil & Gas, L.P.
- CURRENT LESSEE: QEP owns all or a part of the original lessee's interest by virtue of various assignments.
- OGL GAS ROYALTY CLAUSE:  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 3/16th of the net proceeds realized by Lessee for the gas sold, used off the premises, or in the manufacture of products therefrom, such net proceeds to be less a proportionate part of the production, severance and other excise taxes and the cost incurred by Lessee in delivering, processing, compressing, or otherwise making such gas merchantable, said payments to be made monthly

**10. CHESAPEAKE:  LECK 2-21 -** N/2 N/2 S/2 NE/4 – completed: 6/9/1999

**QEP–Chieftain Relationship: Force Pooled Interest**

- UNIT:  The Leck 2-21 well is located in §21-13N-10W – Canadian Co., OK.
- OPERATOR: Chesapeake
- OCC DRILLING & SPACING ORDER:  97684 – 640 - Gas
- GAS MARKETING:  QEP separately markets its share of gas as non-operator and pays the royalty pool for the Leck 2-21 well.
- OGL DATE:  Pooled  - See OCC Pooling Order No. 428507 dated 11/30/1998 as corrected by Order No. 428591 – 12/2/1998 - **Exhibit "5"**
- OGL RECORDED:  N/A
- DESCRIPTION:  N/A
- ORIGINAL FORCE POOLED MINERAL OWNER:  Blanche I. Kernke Revocable Trust dated 6-29-1986.
- CURRENT FORCE POOLED OWNER: Chieftain owns all or a part of the minerals subject to the Force Pooled Order Mineral Deed from Joseph Brian Kernke – 9/16/2004.
- POOLING APPLICANT: RDH Enterprises, Inc. – OCC Pooling Order #428507 as corrected by Order #428591
- CURRENT FORCE POOLED LESSEE: QEP acquired a portion of the force pooled interests via Assignment, Stipulation and Cross Conveyance by and among RDH Enterprises, Inc. and Universal Resources, Inc. (predecessor to QEP)  Book 2248, Page 682 – 4/5/1999
- ROYALTY CLAUSE: Force Pooled Order NO. 428507 – Default pooled election paragraph 2(b) - $50.00 per acre, plus a proportionate share of an overriding or excess royalty of 1/16th of 8/8ths.

**11. CHESAPEAKE: ICE "A" 1** – C NW/4 – completed 7/29/1977

**QEP–Chieftain Relationship: Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT: The Ice "A" 1 well is located in §10-15N-13W, Blaine County, OK.
- OPERATOR: Anson
- OCC DRILLING & SPACING ORDER: 85095 – 640 - Gas
- GAS MARKETING: QEP separately markets its share of gas as non-operator and pays the royalty pool for the Ice "A" 1 well.
- OGL Date: 9/23/1975
- OGL RECORDED: Book 253, Page 157, **Exhibit "6"**
- DESCRIPTION: NW/4 - §10-15N-13W
- ORIGINAL LESSOR: T.A. Bray and Lesba L. Bray, h/w
- CURRENT LESSOR: Chieftain owns all or a part of the minerals subject to this Lease by virtue of various intervening conveyances.
- OGL ORIGINAL LESSEE: Roger S. Folsom
- CURRENT LESSEE: Universal (Predecessor to QEP)
- OGL GAS ROYALTY CLAUSE: 2nd To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the lease premises, or used in the manufacture of products therefrom, 3/16ths of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom.

**12. CHESAPEAKE: BRAY 1-22** – SW/4 SW/4 NW/4 – completed 8/14/1990

**QEP–Chieftain Relationship: Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT: The Bray 1-22 well is located in §22-4N-4W, Garvin County, OK.
- OPERATOR: Chesapeake
- OCC DRILLING & SPACING ORDER: 340757 – 160 - Oil
- GAS MARKETING: QEP separately markets its share of gas as non-operator and pays the royalty pool for the Bray 1-22 well.
- OGL Date: 3/19/1945
- OGL RECORDED: Book 245, Page 602, **Exhibit "7"**
- DESCRIPTION: S/2 NW/4 NW/4 - §22-4N-4W
- ORIGINAL LESSOR: W. T. Bray and Betty E. Bray h/w
- CURRENT LESSOR: Chieftain owns all or a part of the minerals subject to this Lease by virtue of various intervening conveyances.

11

- OGL ORIGINAL LESSEE: Carl J. O'Hornett
- CURRENT LESSEE: Universal Resources Corp (predecessor to QEP)
- OGL GAS ROYALTY CLAUSE: 2nd To pay lessor one-eighth (1/8) of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, where the same is being used off the premises and if used in the manufacture of gasoline, a royalty of one-eighth (1/8), payable monthly at the prevailing market rate for gas;
3rd   To pay lessor for gas produced from any oil well and used off the leased premises or in the manufacture of gasoline or any product a royalty of one-eighth (1/8th) of the proceeds at the mouth of the well.

**13. MERIT: RHOADES 1-23** – E/2 E/2 NW/4 – completed 3/31/1995

**QEP–Chieftain Relationship: Direct Lessor-Lessee by assignment of original lessor and lessee.**

- UNIT: The Rhoades 1-23 well is located in §23-1N-7W, Stephens County, OK.
- OPERATOR: Merit
- OCC DRILLING & SPACING ORDER:  89818 – 640 - Gas
- GAS MARKETING:  QEP separately markets its share of gas as non-operator and pays the royalty pool for the Rhoades 1-23 well.
- OGL Date:  7/22/1968
- OGL RECORDED:  Book 1036, Page 560, **Exhibit "8"**
- DESCRIPTION: SE/4 §23-1N-7W
- ORIGINAL LESSOR: C.F. Smalley and Ona E. Smalley h/w
- CURRENT LESSOR: Chieftain owns all or a part of the minerals subject to this Lease by virtue of various intervening conveyances.
- OGL ORIGINAL LESSEE:  Jack B. Smith
- CURRENT LESSEE: QEP owns all or a part of the original lessee's interest by virtue of various assignments
- OGL GAS ROYALTY CLAUSE:  2nd To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, one-eighth (1/8) at the market price at the well for the gas sold, used off the premises, or in the manufacture of products therefrom, said payments to be made monthly.
3rd To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, one-eighth (1/8) of the proceeds, at the mouth of the well, at the prevailing market rate for the gas during which time such gas shall be used.

**14. QEP: HICKMAN 2-34** – NW/4 SE/4 SW/4 –completed 4/2/1981

**15. QEP: RAY HICKMAN 1-34** – W/2 E/2 SE/4 – completed 10/24/1999
**16. QEP: REBA 1-34** – E/2 E/2 SW/4 NE/4 – completed 4/9/2009

### QEP–Chieftain Relationship:  Force Pooled Interest

- UNIT: The Hickman 2-34, Ray Hickman 1-34, and Reba 1-34 wells are located in §34-6N-18E, Latimer County, OK.
- OPERATOR: QEP
- OCC DRILLING & SPACING ORDER:  160305 – 640 - Gas
- GAS MARKETING:  QEP markets gas for itself and others as the well operator and pays the royalty pool for the Hickman 2-34 well (no take-in-kind owner), the Ray Hickman 1-34 well (one take-in-kind owner), and the Reba 1-34 well (one take-in-kind owner).
- OGL Date:  Force Pooling Order dated 7/28/1959.
- OGL RECORDED: Force Pooling Order recorded Book/Page 24/1959.
- POOLING APPLICANT:  Brock Hydrocarbons

18.    Pursuant to Okla. Stat. tit. 52, § 87.1e and 570.4, all royalties in a drilling and spacing unit are effectively pooled or "communitized" so that all royalty owners receive a proportionate share of all royalty revenue from all gas sold from the well. Each royalty payment goes into a common royalty pool comprised of all proceeds from all of the gas sales from the well.  Once pooled, the revenue in the royalty pool is then distributed **proportionately** among **all** royalty owners in the drilling and spacing unit— not just the royalty owners who have a direct lessor-lessee relationship with the working interest owner selling the gas.

19.    The result of § 87.1e and 570.4 is that, ultimately, royalty owners do not receive royalty based solely on the terms of their individual leases, but rather their proportionate share of all royalties from the common royalty pool.  Stated differently, if QEP is selling gas only for its own account from a QEP well that is producing from a

drilling and spacing unit, then QEP's royalty obligation is determined by the terms of its oil and gas lease.  The royalty share must then be distributed proportionately between all royalty owners in the well (not just the royalty owners who have a lease directly with QEP).

20.     All Oklahoma wells from which QEP is marketing gas for itself and others are subject to drilling and spacing orders of the Oklahoma Corporation Commission. QEP admits it pays royalties pursuant to Section 570.4 using the methodology described above.  Plaintiffs and other Class Members that have a lease directly with QEP in relation to a particular Oklahoma well have a breach of contract claim against QEP when royalty is not paid correctly in regard to that lease and well.  Plaintiffs and those Class Members have a right to their proportionate share of the royalty proceeds from QEP gas sales. Those Class Members who do not have a lease directly with QEP in regard to a particular well also have a right to their proportionate share of the royalty proceeds from QEP sales. Those Class Members have an unjust enrichment claim in law and equity.

21.     The relationship between QEP and Plaintiffs and the Class is such that they have reasonably placed trust and confidence in QEP to properly pay royalty.

22.     QEP has superior access to the information relating to the claims herein.

23.     QEP has a fiduciary or quasi-fiduciary relationship with Plaintiffs and the Class when QEP acts as operator of a drilling and spacing unit created by orders of the Oklahoma Corporation Commission.

24.     As a fiduciary or quasi-fiduciary, QEP is: (1) held accountable to Plaintiffs and the Class, (2) held to a high degree of good faith in its dealings, and (3) not permitted to make or use of its position to realize unauthorized benefits for its own personal interests at the expense of Plaintiffs and the Class.   QEP has never repudiated its fiduciary or quasi-fiduciary duty and Plaintiffs and the Class have never had any reason to know that QEP was not abiding by its duty.

25.     QEP has used its position as an operator and as an oil and gas working interest owner to wrongfully deduct Fees from royalty payments due Plaintiffs and the Class on the Oklahoma Wells.

26.     The Fees were for services incurred to place the raw wellhead gas produced from the Oklahoma Wells into marketable condition; and/or the Fees did not enhance the value of an already marketable product; and/or the Fees were not reasonable and did not increase the royalties due Plaintiffs and the Class in proportion to the Fees.

27.     Based on information and belief, the Fees were deducted from the gross value of the gas and its constituents prior to production proceeds being paid to Plaintiffs and the Class. Based on information and belief, the Fees and other royalty underpayments were fraudulently concealed from Plaintiffs and the Class by falsely reporting the gross value and price of the gas sold on the royalty check counter-foils and by using said counter-foils to deceive Plaintiffs and the Class into believing that all royalties had been properly paid and that QEP was properly accounting to Plaintiffs and the Class for royalty owed.

28.     Based on information and belief, in violation of the implied covenant to market contained in the oil and gas leases, and in violation of its duties, QEP has failed to make diligent efforts to secure the best term available for the sale of gas and its constituents from the Oklahoma Wells, and Plaintiffs and the Class have received reduced production proceeds from the Oklahoma Wells as a result thereof.

29.     QEP has maintained an open account with Plaintiffs and the Class members by making prior period adjustments to royalty payments, which further led Plaintiffs and the Class members to believe that QEP had, or would, make proper payment of royalty in compliance with its obligations.

30.     QEP is fully aware of the duties and obligations incumbent upon it.  QEP is fully aware that it is in breach of these duties and obligations.  Nevertheless, QEP has taken no action to cure these violations of the law.

31.     The acts of QEP go far beyond simple breach of contract and amount to independent torts resulting in damages to Plaintiffs and the Class and unjust enrichment to QEP.

32.     The fraud, deceit and other torts described herein served to financially benefit QEP through the reduction of royalty paid to Plaintiffs and the Class on production marketed by QEP from the Oklahoma Wells.

33.     Based on information and belief, QEP has been unjustly enriched as a result of its improper actions.  QEP should not be allowed to retain any portion of its ill-gotten

gains, or profits on those ill-gotten gains. QEP should be required to disgorge, and pay as additional damages, all such gains, and profits on such gains to Plaintiffs and the Class.

34.     The tortious acts of QEP were done intentionally, maliciously and with utter disregard for the rights of Plaintiffs and the Class. QEP should be required to pay punitive damages as punishment for its wrongdoing and as an example to deter others who might act in a similar manner.

35.     To the extent that QEP relies on any statute of limitation as a defense, the Class claims that, under the facts at issue here, the doctrine of equitable estoppel or tolling, open account, discovery rule and other defenses apply to toll the running of any statute of limitations.

## BREACH OF CONTRACT

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

36.     As discussed above, in certain Oklahoma wells, Plaintiffs and other Class Members have a direct contractual relationship with QEP by virtue of their direct lessor-lessee relationship.

37.     QEP has breached the implied covenant to market contained in each oil and gas lease and has otherwise breached its duties to properly pay royalty.

38.     Plaintiffs and the Class have been damaged.

39.     Additionally, Plaintiffs' and the Class' claims are based on an open account beginning with the initial royalty payments and still continuing on each Oklahoma Well.

40.     QEP has been unjustly enriched as a result of its improper underpayment of royalty.

## UNJUST ENRICHMENT

The allegations set forth above are incorporated herein by reference.  Plaintiffs and the Class assert a claim for unjust enrichment in the alternative and as a supplement to each of their other claims.

41.     Plaintiffs and the Class have been damaged and QEP has been unjustly enriched as a result of its improper underpayment of royalty.

42.     In certain Oklahoma wells, Class Members do not have a direct contractual relationship with QEP.

43.     For those Class Members in such wells, there is no adequate remedy at law available to recover damages from QEP's improper underpayment of royalty.

44.     Plaintiffs and the Class claim that QEP has been unjustly enriched to the extent QEP benefitted from the use of money that rightfully should have been paid as royalty to Plaintiffs and the Class.

## BREACH OF FIDUCIARY OR QUASI-FIDUCIARY DUTY

The allegations set forth above are incorporated herein by reference.  This claim is made both cumulatively and in the alternative to each of the other claims made.

45.     QEP, as the operator of Oklahoma Wells subject to orders of the Oklahoma Corporation Commission which pool royalty, owed a fiduciary or quasi-fiduciary duty to the Class to properly pay royalty.

18

46.     QEP has never repudiated its fiduciary or quasi-fiduciary duty to the Class. In fact, QEP's actions have reinforced the existence of such a duty since it totally controlled royalty payments and Plaintiffs and the Class were forced to put faith and trust in QEP.  QEP knew very well that Plaintiffs and the Class had no option but to trust QEP to account for and pay royalty properly.

47.     Plaintiffs and the Class have been damaged and QEP has been unjustly enriched.

48.     QEP should pay, in addition to actual damages, punitive damages as a method of punishing QEP and setting an example for others.

## FRAUD (ACTUAL AND CONSTRUCTIVE) AND DECEIT

The allegations set forth above are incorporated herein by reference.  This claim is made both cumulatively and in the alternative to each of the other claims made.

49.     QEP secretly and knowingly underpaid royalties on Oklahoma Wells without the knowledge of Plaintiffs and the Class.

50.     QEP sent false and misleading statements monthly to Plaintiffs and the other Class members on check counter-foils with the intent to have Plaintiffs and the Class rely on those false statements. QEP knew that Plaintiffs and the Class had no choice but to rely on the false statements of QEP.  Under such circumstances, reliance of the Class is presumed in law and in fact.

51.     Plaintiffs and the Class have been damaged and QEP has been unjustly enriched.

52.     QEP should pay, in addition to actual damages, punitive damages as a method of punishing QEP and setting an example for others.

## ACCOUNTING

The allegations set forth above are incorporated herein by reference.

53.     QEP has a duty to timely disclose to Plaintiffs and the Class the full and true value of the production from the Oklahoma Wells.  QEP has breached that duty.

54.     QEP has: (1) failed to account to Plaintiffs and the Class for their proper royalty share of production from the Oklahoma Wells; (2) failed to fully account for the full value of the production from the Oklahoma Wells; and (3) failed to fully account for all deductions and reductions from the value of the production.  Plaintiffs and the Class request an order of this Court requiring QEP to provide a full and complete accounting for all production proceeds and deductions or reductions from the date QEP acquired its working interest until the date of trial in the matter on each Oklahoma Well.

**WHEREFORE,** Plaintiffs and the Class seek: (1) judgment for damages as alleged herein against QEP comprised of: (a) an accounting; (b) damages based on all of the claims made herein; (c) punitive damages; (d) interest; (e) attorney's fees; (f) expert and litigation costs; (g) court costs; and (h) such other relief as Plaintiffs and the Class may be entitled to by law or in equity.

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**

/s/ Bradley E. Beckworth
Bradley E. Beckworth, OBA #19982
Susan Whatley, OBA #30960
Nix, Patterson, & Roach, LLP
205 Linda Drive
Daingerfield, TX 75638
(903) 645-7333
bbeckworth@nixlawfirm.com
susanwhatley@nixlawfirm.com

Robert N. Barnes, OBA #537
Patranell Lewis, OBA #12279
BARNES & LEWIS, LLP
720 N.W. 50th Suite 200(B)
Oklahoma City, OK 73118
(405) 843-0363
plewis@barneslewis.com
rbarnes@barneslewis.com

Jeffrey J. Angelovich, OBA #19981
Michael Angelovich, Texas Bar No. 00785666
Brad Seidel, Texas Bar No. 24008008
Lisa Baldwin, Texas Bar No. 24069334
Nix, Patterson & Roach, LLP
3600 N. Capital of TX Hwy.
Bldg. B. Suite 350
Austin, TX 78746
(512) 328-5333
jangelovich@npraustin.com
mangelovich@npraustin.com
bseidel@npraustin.com
lbaldwin@npraustin.com

D. Neil Smith, Texas Bar No. 00797450
Nix, Patterson, & Roach, LLP
5215 N. O'Connor Blvd. Suite 1900
Irving, TX 75039
(972) 831-1188
dneilsmith@mac.com

**CLASS COUNSEL AND
ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2012, I electronically transmitted the attached document to the Clerk of Court, using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Max C. Tuepker
John F. Shepherd
Barry Bartel

**ATTORNEYS FOR DEFENDANT**

/s/ Bradley E. Beckworth
Bradley E. Beckworth