## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY and JACK LANCET, | ) ) ) ) | |
| Plaintiffs, | ) | No.  CIV-11-212-R |
| v. | ) ) ) | |
| QEP ENERGY COMPANY, | ) ) | |
| Defendant. | ) | |

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FORM AND MANNER OF NOTICE, AND PLAN OF ALLOCATION

This is a class action lawsuit brought by Class Representatives, Chieftain Royalty Company and Jack Lancet (collectively, "Class Representatives"), on behalf of themselves and as representatives of a Class of royalty owners (defined below), against Defendant, QEP Energy Company ("QEP"), for the alleged underpayment of gas royalties.  On March 16, 2012, the Court certified the Class's claims against QEP for breach of contract and breach of fiduciary duty.  Docket No. 87.  On or about January 10, 2013, Class Representatives and QEP reached a preliminary agreement to settle this Action for a total cash payment of $115 million and binding future benefits worth at least $40 million, for a total present value of $155 million (the "Settlement").  On February 13,

2013, the Settling Parties executed a Stipulation and Agreement of Settlement (the "Stipulation"), finalizing the terms of the Settlement.[1]

On February 20, 2013, the Court preliminarily approved the Settlement and issued an Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Final Fairness Hearing (the "Preliminary Approval Order"). Docket No. 123.  In the Preliminary Approval Order the Court, *inter alia*:

a.  preliminarily found (i) the proposed Settlement resulted from extensive arms-length negotiations; (ii) the proposed Settlement was agreed to only after Class Counsel had conducted legal research and fact and expert discovery regarding the strengths and weakness of Class Representatives and the Class's claims; (iii) Class Representatives and Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate; and (iv) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Class;

b.  preliminarily approved the Settlement as fair, adequate, and reasonable and in the best interest of the Class;

c.  preliminarily approved the plan of allocation and distribution of settlement proceeds to the Class;

---

[1] Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Stipulation.

d.    preliminarily approved the form and manner of the proposed Notice, including the publication Notice, to be disseminated to the Class, finding specifically that such Notice (i) described the terms and effect of the Settlement; (ii) notified the Class that Class Counsel will seek attorneys' fees, reimbursement of Litigation Expenses, and Case Contribution Awards for Class Representatives' services; (iii) notified the Class of the time and place of the Final Fairness Hearing; (iv) described the procedure for requesting exclusion from the Settlement; and (v) described the procedure for objecting to the Settlement or any part thereof.

e.    instructed the Settling Parties to disseminate the approved Notice to the Class in accordance with the Stipulation and in the manner approved by the Court, with all costs of administering such Notice to be borne by QEP;

f.    appointed Rust Consulting, Inc. as Settlement Administrator;

g.    appointed Wells Fargo, N.A. as Escrow Agent;

h.    set the date and time for the Final Fairness Hearing as May 28, 2013 at 10:30 A.M. in the United States District Court for the Western District of Oklahoma; and

i.    set out the procedures and deadlines by which Class Members could properly request exclusion from the Class or object to the Settlement or any part thereof;

After the Court issued the Preliminary Approval Order, due and adequate Notice of the Settlement was given to the Class, notifying them of the Settlement and the

upcoming Final Fairness Hearing. On May 28, 2013, in accordance with the Preliminary Approval Order and the Notice sent to the Class, the Court conducted a Final Fairness Hearing to:

       a.     determine whether the Settlement—including the changes made to QEP's royalty calculation methodology and the manner in which check stubs are prepared—should be approved by the Court as fair, reasonable, and adequate and in the best interests of the Class;

       b.     determine whether the notice method utilized by the Settling Parties: (i) constituted the best practicable notice under the circumstances; (ii) constituted notice reasonably calculated under the circumstances to apprise members of the Class of the pendency of the litigation, the Settlement, their right to exclude themselves from the Settlement, their right to object to the Settlement, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

       c.     determine whether to approve the Plan of Allocation and Distribution;

       d.     determine whether a Final Approval Order should be entered pursuant to the Stipulation, *inter alia*, dismissing the Action against QEP with prejudice and extinguishing, releasing, and barring all Released Claims in accordance with the Stipulation;

e.       determine   whether   the   applications   for   attorneys'   fees,

reimbursement for Litigation Expenses, and Case Contribution Awards to Class

Representatives are fair and reasonable and should be approved;[2] and

f.       rule on such other matters as the Court deemed appropriate.

The Court, having reviewed the Stipulation and all related pleadings and filings,

and having heard the evidence and argument presented at the Final Fairness Hearing, now

**FINDS, ORDERS, and ADJUDGES as follows**:

1.       The Court, for purposes of this Final Approval Order, adopts all defined

terms as set forth in the Stipulation and incorporates them as if fully set forth herein.

2.       The Court has jurisdiction over the subject matter of this Action and all

matters relating to Settlement, as well as personal jurisdiction over all of the Settling

Parties and members of the Class.

3.       The Class is defined as:

All non-excluded persons or entities who are or were royalty owners in
Oklahoma wells where QEP Energy Company is or was the operator (or, as
a non-operator, QEP separately marketed gas).  The Class Claims relate
only to payment for gas and its constituents (helium, residue gas, natural
gas liquids, nitrogen and condensate) produced from the wells.  The Class
does not include overriding royalty owners or other owners who derive
their interest through the oil and gas lease.  The Class is divided into the
following subclasses:

**Subclass 1**:        All Class Members who have or had a direct lessor-
                      lessee relationship with QEP

Subclass 1(a):        where QEP is or was the Operator of Oklahoma wells.

---

[2] The Court will issue a separate Order pertaining to Class Counsel's request for attorneys' fees
and reimbursement of Litigation Expenses and Class Representatives' request for a Case
Contribution Award.

| Subclass 1(b): | where QEP, as non-operator of Oklahoma wells, separately marketed gas. |
|---|---|
| **Subclass 2**: | All Class Members who do not or did not have a direct lessor-lessee relationship with QEP |
| Subclass 2(a): | where QEP is or was the operator of the Oklahoma wells. |
| Subclass 2(b): | where QEP, as non-operator of Oklahoma wells, separately marketed gas. |

The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; (3) the claims of royalty owners to the extent previously released by settlement in the case styled *McIntosh v. Questar,* Case No. CJ-02-22, District Court for Major County; (4) members of the class certified in *Bridenstine v. Kaiser Francis,* Case No. 97, 117 (unpublished) August 22, 2003, cert. denied, June 26, 2006, Okla. Sup. Ct., Case No. DF-01569, but only to the extent of their respective royalty interests in wells connected to the Beaver Gathering System in Beaver and Texas counties, Oklahoma; (5) members of the class certified in *Naylor Farms v. Anadarko OGC Co.*, No. CIV-08-668-R, 2009 U.S. Dist. LEXIS 127516 (W.D. Okla. Aug. 26, 2009), but only to the extent of their respective royalty interests in wells operated by QEP in Beaver and Texas counties, Oklahoma; and (6) persons or entities that Plaintiffs' counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

The Court finds that, in addition to the persons and entities excluded pursuant to categories (1)-(6) in the above Class definition, the persons and entities identified in Exhibit A have filed timely and valid Requests for Exclusion and are hereby excluded from the forgoing Class definition, will not participate in or be bound by the Settlement, or any part thereof, as set forth in the Stipulation, and will not be bound by or subject to the Releases provided for in this Final Approval Order.

4.     As used in this Final Approval Order the following terms shall have the following meanings:

a. "Released Claims" include all claims associated with the marketing of and calculation and reporting of royalty on gas and its constituents (including helium, residue gas, natural gas liquids, nitrogen and condensate) during the Claim Period for each Class Well.  The Released Claims include those set out in the Complaint, including: (1) that QEP underpaid royalty as a result of direct or indirect deductions from royalty associated with marketing, gathering, compressing, dehydrating, treating, processing, including plant and compressor fuel, and similar services with respect to gas and its constituents; (2) that QEP improperly paid royalty based on proceeds received from sale of the gas and gas constituents under "percentage of proceeds" ("POP") or similar contracts; (3) that QEP underpaid royalty by not paying royalty on gas used off the lease, gas used for gas plants, and gas used in the manufacture of products (fuel gas); (4) that QEP failed to pay or underpaid royalty on drip gas or condensate that was separated from the gas stream in the gathering system or gas plant; (5) that QEP underpaid royalty by not paying royalty on the full value (before deduction of any costs) of residue gas and natural gas liquids that were part of the gas stream at the wellhead gas meter; (6) that QEP misled Class Members in monthly royalty payments as to the amount and nature of deductions from royalty on gas and gas constituents; (7) that QEP violated its fiduciary duties to the Class Members; (8) that QEP failed to provide all of the information  required by the Oklahoma Production Revenue

Standards Act (PRSA) on monthly check stubs, and otherwise failed to comply with the PRSA; (9) that QEP failed to make diligent efforts to secure the best terms available for the sale of gas and its constituents; (10) that QEP failed to account to Class Members for the full value of the production, including all deductions and reductions from the value of production; and (11) that as a result of QEP's actions as alleged above, QEP is liable to Class Members for breach of contract, tortious breach of contract, breach of fiduciary duty, actual fraud, constructive fraud, deceit, conversion, conspiracy, unjust enrichment/disgorgement, accounting, punitive damages, statutory interest and penalties under the PRSA or otherwise, and fees (attorney fees, expert fees and litigation costs) under the PRSA.  The Released Claims also include all other legal theories that, based on the facts alleged in the Complaint, could have been asserted as to royalties payable by QEP on the production of gas and its constituents from the Class Wells during the Claim Period(s), except to the extent described in the next paragraph.

The Released Claims do not include royalty paid by QEP as a pass-through agent for 'take-in-kind' working interest owners pursuant to 52 O.S 570.4(B), for which the parties agree QEP has no liability.  The Released Claims also specifically do not include: (a) royalty payment adjustments made or to be made in the ordinary course of business for production months through February, 2013; (b) claims that QEP is obligated to make routine prior period adjustments for clerical or administrative errors concerning prices actually received, volumes actually sold

or produced, or decimal interest designations of the type that historically have been addressed by QEP by way of prior-period adjustments, but only to the extent that QEP in fact received, or receives a retroactive price, volume or value adjustment; (c) claims to money held in suspense by QEP as of the release date; (d) claims that QEP failed to comply with obligations to protect the Class Members from drainage; (e) and/or claims that QEP breached obligations to the Class Members to develop Oklahoma oil and gas leases.  "**Class Claims**" shall have the same meaning as "**Released Claims**."  The parties agree that the Settlement Cash Amount does not include any payment for underpaid royalties from Class Wells sold by QEP to other parties for production that has occurred from and after the effective date such Class Wells were sold by QEP to such other party or parties.

b.     "Released Parties" means QEP, and all past and present parents, affiliates, directors, officers, employees, attorneys, agents, consultants, servants, stockholders, representatives, subsidiaries, predecessor entities of, and affiliated successor entities to QEP.  Released Parties shall also include the assignor of any Class Wells for which QEP has assumed the assignor's liability for any alleged royalty underpayment, but only as to Class Claims with respect to such assigned Class Wells during the Claim Period.  Other working interest owners in Class Wells also constitute Released Parties, but only to the extent QEP, as well operator, marketed gas and its constituents and paid royalty on behalf of such other working interest owners during the Claim Period(s).  No claims are released

9

against other working interest owners to the extent they separately marketed gas from Class Wells. No claims are released as to gas marketed for QEP by third party operators not affiliated with QEP; however, the Class and all Class Members covenant not to sue the Released Parties for any alleged royalty underpayment with respect to such gas and its constituents marketed by others. The Class does not release QEP's assignees in Class Wells for any claims occurring or arising after the Claim Period(s) for any well(s) so assigned to any assignee. Released Parties do not include any entity to whom QEP has sold any of the Class Wells (and associated Class Leases and Class Force Pooled Royalty Interests) for any claims occurring or arising after the Claim Period(s) for any Class Well(s) sold to any such entity. Further, notwithstanding any language herein to the contrary, Released Parties **do not** include any non-affiliated company to whom QEP sold Class Wells, for any claims relating to underpaid royalty on production that has occurred from and after the effective date such Class Wells were sold by QEP to such other company.

5.      At the Final Fairness Hearing on May 28, 2013, the Court fulfilled its duties to independently evaluate the fairness, reasonableness, and adequacy of, *inter alia*, the Settlement, the Notice provided to the Class, and the proposed Plan of Allocation (as defined in Paragraph 11 below), considering not only the pleadings and arguments of Settling Parties and their Counsel, but also the concerns of any objectors and the interests of all absent Class Members. In so doing, the Court considered any argument that could

reasonably be made against, *inter alia*, approving the Settlement and the Notice, even if such argument was not actually presented to the Court by pleading or oral argument.

6.      The Court further finds that due and proper notice of the Settlement was given to the Class in conformity with the Stipulation and Preliminary Approval Order. The form, content, and method of communicating the Notice disseminated to the Class and published pursuant to the Stipulation and the Preliminary Approval Order: (i) constituted the best practicable notice under the circumstances; (ii) constituted notice reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the litigation, the Settlement, their right to exclude themselves from the Settlement, their right to object to the Settlement, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, the Due Process Clause of the State of Oklahoma, and any other applicable law.

7.      In addition, the Court finds that the Settling Parties performed at least the following actions in furtherance of disseminating Notice to the Class:

      a.      After the Court preliminarily approved the Settlement and the form and manner of notice, Class Counsel, in conjunction with Counsel for QEP, conducted an extensive campaign to distribute notice to the Class.  This campaign was necessary due to the number of Class Members in Class Wells operated by third-party energy companies.

b.      Of the 2,129 Class Wells in this case, about half of the wells are or were operated by QEP, and the remainder are or were operated by 221 third-party energy companies.  In order to obtain current Class Member information from the operators in these third-party operated wells, Class Counsel, in conjunction with landmen, staff members, and QEP's Counsel, attempted to contact and negotiate with every third-party operator to obtain the ownership and address information for December 2012 production on Class Wells not operated by QEP, or the most recent ownership and address information available.

c.      These efforts required a team of more than twenty lawyers, landmen, and support staff.  Over the course of approximately six weeks, this team, working under Class Counsel's supervision, spent hundreds of hours, including evenings, weekends, and the Easter holiday weekend, working on this project.  The Settling Parties went to great lengths to obtain updated and accurate information relating to these QEP non-operated Class Wells.  Some of the Class Wells had been plugged and, through extensive effort, Counsel obtained the last available pay deck for those Wells to the extent such decks were available.  Also, Class Wells were frequently sold to other operators, sometimes during the Claim Period.  Thus, the Settling Parties and their Counsel had to track down the current operator of these wells, primarily by searching the records of the Oklahoma Corporation Commission.  On many occasions, it was necessary to contact operators more than once as they failed to provide all of the data needed.

d.　Very few operators produced the Class Member data in the requested format of a searchable Microsoft Excel spreadsheet. Therefore, persons under Class Counsel's supervision spent many weeks converting the data into a useable format for the Settlement Administrator to send out timely and proper Notice to Class Members. This same data will be used later to distribute the Net Settlement Fund to Class Members according to the Plan of Allocation.

e:　After the Court preliminarily approved the Settlement and the form and manner of notice and the list of Class Wells currently or previously operated by QEP was prepared, QEP personnel, with the assistance of an outside accounting firm, compiled ownership and address information from the February 2013 Division Order Masters (DOMs) for those wells used to pay December 2012 production. In some cases where DOMs were not available, Zeebco prepared the ownership information based on the best available information.

f　The long-form notice ("Notice") was sent in four "waves":

- March 22, 2013 – 18,669 Notices mailed

- April 8, 2013 – 21,320 Notices mailed

- April 12, 2013 – 1,935 Notices mailed

- April 15, 2013 – 2,445 Notices mailed

Through this effort, Class Counsel was able to mail Notices to Class Members whose claims represent approximately 97% of the Net Settlement Fund.

g　To ensure that as close to 100% of the Class as possible received notice, additional notice was published on April 5, 2013 in the *Tulsa World* and in

13

the *Oklahoman*.   Class Counsel is also continuing to contact the remaining operators to obtain pay decks for distribution purposes.   In addition to the Notice being sent to the Class, QEP chose to send timely CAFA notice to the attorney general in all fifty states and Attorney General of the United States.   [Doc. No. 145] and a URL address was set up for the dedicated Settlement website where Class Members may obtain further information.

In accordance with the above, the Court finally approves the form, manner, and content of the Notice used by the Settling Parties and finds that the Plan of Allocation described below may be modified without further notice being required.

8.      Pursuant to and in accordance with Federal Rule of Civil Procedure 23, the Settlement, including, without limitation, the Settlement Amount, the releases, and the dismissal with prejudice of the Released Claims against the Released Parties as set forth in the Stipulation, is finally approved as fair, reasonable and adequate and in the best interests of the Class.   The Settlement was entered into between the Settling Parties at arm's length and in good faith after substantial negotiations and formal mediation free of collusion.   The Settlement fairly reflects the complexity of the Claims, the duration of the litigation, the extent of discovery, and the balance between the benefits the Settlement provides to the Class and the risk, cost, and uncertainty associated with further litigation and trial.   The Settling Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with the Stipulation, and the Clerk of this Court is directed to enter and docket this Final Approval Order in the Action.

9.     The Court further approves the future royalty payment methodology set forth in the Stipulation under which QEP will provide the following "Future Benefits" to the Class:

a.     Commencing with production month March 2013 and continuing without limitation thereafter, where QEP markets gas for itself and others from Class Wells and future wells on the Class Leases and Class Force Pooled Royalty Interests (including units created pursuant to Oklahoma Law and or private pooled or communitized units), QEP will make no deduction from royalty for: gathering fees (from the wellhead through the point the gas first enters a mainline high pressure interstate or intrastate transmission pipeline); compression fees (from the wellhead through the point the gas first enters a mainline high pressure interstate or intrastate transmission pipeline); treating and dehydration fees (from the wellhead through the point the gas first enters a mainline high pressure interstate or intrastate  transmission pipeline); and fuel gas (from the lease custody transfer meter through the point the gas first enters a mainline high pressure interstate or intrastate  transmission line).

b.     On gas where QEP receives NGL value or volume where the unprocessed gas has a wellhead heat content of more than 1,050 BTU's per standard cubic foot, QEP will deduct a gross processing fee of $0.30 per gas plant inlet MCF ("Processing Fee") proportionately from all Class Members.  In other words, the Class Members as royalty owners will bear their proportionate part of the gross processing fee.  By way of example only, if the royalty is 1/5[th] then

royalty owners will bear and pay $1/5^{th}$ of a $0.30 processing fee *i.e.* $0.06 per gas plant inlet MCF.  Beginning in 2014, with the January production month, the processing fee shall be adjusted annually based on the proportional year over year change in the Average United States Consumer Price Index for All Items, All Urban Consumers (CPI-U), U.S. City Average (as published by the United States Department of Labor, Bureau of Labor Statistics), for the 12 months ending December 31 of the previous year; provided, however, that such Processing Fee shall never be less than the initial fee of $0.30 per gas plant inlet MCF.  An example calculation for the annual adjustment is attached to the Stipulation as Exhibit 7.  If a plant statement does not contain information on fuel gas volumes consumed before and after the plant inlet, QEP will estimate the plant inlet MCF for purposes of the processing fee calculation by allocating 66.66% of the total calculated fuel gas volumes (*i.e.*, before and after the plant inlet) to points before the plant inlet.

c.      The value of NGLs, residue gas, and fuel gas for calculation of royalty shall be based on the product prices contained in the plant statement issued by the plant operator applicable to each well.  The volume and value of residue gas shall be grossed up to account for percent-of-proceeds (POP) type reductions in the plant statement, if any, and further adjusted to add back the value of the royalty interest owner's share of off-lease fuel that has been deducted in the plant statement.  Likewise, the volume and value of individual NGL products shall be grossed up to 100% of the allocated NGL product volumes and values reported on

the plant statement.  Class Members will not bear any diminution of volume or value for NGLs or residue gas marketed by QEP due to application of direct or indirect fees (for example, a POP reduction) or deduction of off-lease fuel.  The only fee deducted in calculation of royalty will be their proportionate part of the Processing Fee provided for above.  An example of how royalty will be calculated under this paragraph is attached to the Stipulation as Exhibit 8.  QEP will use commercially reasonable efforts to obtain fee-based processing arrangements on future wells on Class Leases (including Units created pursuant to Oklahoma Law and/or private pooling or communitized units) and, where not practicable, QEP will enter into POP contracts that seek to maximize the recovery of NGLs, to the mutual benefit of QEP and the Class Members.

d.      The value of all other gas for calculation of royalty will be the measured quantities (in MMBTU) at the lease custody transfer meter times the Panhandle Eastern Pipe Line Company: Texas, Oklahoma (mainline) monthly index price as published in Platt's Inside FERC's Gas Market Report (the "PEPL Index Price").  If the PEPL Index Price is discontinued or materially modified, or cannot be used, its successor will be used, or in the absence of a successor, QEP will select another publication or methodology that enables calculation of an index price closely comparable to the PEPL Index Price.

e.      With respect to wells subject to existing processing contracts, QEP will, to the extent practicable, seek amendments to the contracts to maximize the

value or volume of liquids recovered thereunder to the joint benefit of QEP and its royalty owners.

f.     Class members who participate in the Settlement are barred from suing QEP or its successors and assigns in relation to the future royalty payment methodology described herein, or on the estimated value of the Future Benefits derived therefrom to an individual Class Member or the Class as a whole.  The future royalty payment methodology described herein is binding on all Class Members who participate in the settlement and on QEP and on their respective successors and assigns.

g.     Chieftain Royalty Company, for its future benefit and the future benefit of the Class, shall have the right to require an audit of QEP's compliance with the future royalty calculation described above.   Such audit rights and procedures are to be carried out in accordance with the Paragraph 2.5 of the Stipulation.  The audit rights set forth therein may be transferred or assigned by Chieftain to any successor, transferee or assignee of Chieftain's interest in any Class Well(s) and/or future well(s) on the Class Leases, or to another Class Member.   Neither Class Counsel, Class Representatives, nor any transferee, assignee or successor of Chieftain of such audit rights shall have any liability whatsoever to QEP or any Class Member or their successors, transferees and assignees for any conduct related to the audit provisions set forth herein barring intentional misconduct. Further, while Chieftain and any designated transferee, assignee and/or successor have the audit rights as described herein, the Settlement

does not limit or enlarge the rights possessed by any Class Member to request information and/or data as otherwise allowed by law regarding each Class Member's royalty interest in any Class Well(s) and/or future well(s) on the Class Leases and Class Force Pooled Royalty Interests.

h.      The Future Benefits arising out of the royalty payment methodology set forth above are binding on QEP (and QEP's successors and assigns) and may not be waived.  Any disputes over QEP's compliance with its obligations under the future royalty payment methodology shall be resolved by binding arbitration, conducted by a single arbitrator mutually agreed to by the Parties, conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association or, if mutually agreed to by the parties, such other rules and procedures as agreed to by the parties.  QEP shall pay the costs of any such arbitration; however, the prevailing party in any such arbitration will be entitled to reimbursement of its reasonable attorney's fees from the losing party.

i.      The future royalty payment methodology set forth above amends the method of calculation of royalty for the Class Leases and Class Forced Pooled Royalty Interests, and runs with the land.  In order to give notice of the agreed methodology for payment of future royalty to successors and assigns of both QEP and the Class Members, QEP shall record a Notice of Settlement Concerning Royalty Payments on Gas and its Constituents, substantially similar to that set forth in Exhibit 9 to the Stipulation, to be indexed against the lands in the counties where Class Leases and Class Forced Pooled Royalty Interests are located.

j.      The Court approves the methodology for preparation of check stubs required by the Oklahoma Production Revenue Standards Act, as set forth in paragraph 2.3 of the Stipulation and Settlement Agreement.

10.    The Court finds that the above-described Future Benefits are fair, reasonable, and adequate and in the best interests of the Class.  The Court further finds that these Future Benefits are sufficiently concrete and quantifiable to be presently valued at $40 million or more based on the evidence presented.  This amount, along with the $115 Settlement Cash Amount, brings the total Settlement Amount to a minimum present value of at least $155 million, which the Court approves as fair, reasonable, and adequate and in the best interests of the Class.

11.    The Court also finds that the following plan of allocation and distribution (the "Plan of Allocation") is fair, reasonable, and adequate and in the best interests of the Class.  As such the Settling Parties are hereby ordered to allocate and distribute the Net Settlement Fund in accordance with the following Plan of Allocation:

a.      **Allocation of Net Settlement Fund to Each Class Well and Class Member.**  The Net Settlement Fund shall be allocated to each of the Class Wells and the royalty owners in the Class Wells on the following basis:

i.      To the extent Class Counsel has not already performed this task, Class Counsel shall, subject to Court approval, first allocate the Net Settlement Fund to individual Class Wells proportionately, with due regard for the production marketed by QEP on behalf of itself and/or other well owners, the amount of claimed royalty underpayment to Class Members,

and the time period when the claimed underpayment occurred.  Thereafter, QEP will allocate or cause the Settlement Administrator to allocate the portion of the Net Settlement Fund allocated to each Class Well proportionately among all Class Members in that well based on their royalty decimal interest as defined below.

      ii.      QEP will cause to be distributed each well's allocation of the Net Settlement Fund proportionately to each Class Member according to each Class Member's royalty decimal interest.  For QEP-operated wells, the allocation will be based on Division Order Masters used to pay royalty for the December 2012 production for each Class Well or based on the last Division Order Master available before that date.  For non-operated wells with current production, QEP will either cause  payments to be made to Class Members based on the data obtained as described above in Paragraph 7 or will pay to the third-party operator the portion of the Net Settlement Fund attributable to that non-operated Class Well for further distribution to Class Members.   In the case of non-operated wells without current production, the Settling Parties have made reasonable commercial efforts to determine Class Member royalty owners (and obtain each Class Member's decimal interest and last known address) by contacting last known well operators, QEP will cause payments to be made to Class Members based on that data as described above in Paragraph 7. The Court recognizes that the Settling Parties have already obtained much, if not all, of the data needed to

make distributions. If additional information can reasonably be gathered, then QEP will make distribution to the appropriate Class Member or third-party well operator. However, if the information needed to make distribution cannot be obtained through such efforts, the portion of the Net Settlement Fund attributable the unknown Class Members will remain in the Escrow Account as part of the unclaimed amount. QEP may request the Court to require current well operators to distribute such funds on its behalf to those current royalty owners who are Class Members, without objection by Class Representatives. In such case, QEP will provide assistance to the operators as reasonably required. However, it is recognized that, on non-operated Wells, it is the well operator (not QEP) who has direct access to royalty owner pay decks.

b.  **Procedure for Distribution of Net Settlement Fund to Class Members.**  The parties shall execute the following procedure in making distribution to the Class Members:

i.  QEP shall reasonably cooperate to provide all available data and other information: (1) reasonably necessary to complete the Settlement and (2) available to QEP from records to which QEP has access or can reasonably and timely obtain through requests to others; however, QEP shall not be required to take legal action against any third party to obtain the requested information. As soon as possible after final approval of the Settlement by the Court, and in no event more than thirty (30) days after

final approval, QEP shall provide the Settlement Administrator and Class Counsel in a readily usable electronic format with names, addresses, tax identification numbers and royalty decimal interests of Class Members on a well-by-well basis for currently producing wells operated by QEP.  For all Class Wells operated by a third party, Class Counsel and/or QEP will provide the Settlement Administrator names, addresses, tax identification numbers and royalty decimal interests of Class Members on a well-by-well basis as soon as reasonably possible in a readily useable electronic format based on the data gathered as described above in Paragraph 7.  To the extent possible, the data will be based on ownership as of production month December 2012 or the last ownership information available before that date.  The Court recognizes that QEP has already provided or the Settling Parties have already obtained much, if not all, of this data.  The Court recognizes that, for some wells that are no longer producing, have been previously sold, or are operated by third parties, QEP may not have and may not be able to obtain information necessary to identify Class Members in those wells.

ii.     With Court approval, QEP or the Settlement Administrator will then cause distribution checks in appropriate amounts to be placed in the United States mail based on the information and allocation procedure described above ("Distribution Checks").  It is contemplated that there will be a series of distributions since the identity of and amount owed to each

Class Member will not be available for all Class Members at the same time and so that payments to identified Class Members are not unduly delayed.

iii.     It is the duty of the payee of the check to ensure that the funds are paid to the Class Member(s) entitled to the funds, and the release by Class Member(s) entitled to the funds shall be effective regardless of whether such Class Member(s) receive some, all, or none of the proceeds paid to a payee of a settlement check. Included with each Distribution Check shall be an enclosure that includes the following or substantially similar notice:

> TO: Class Member or Designated Royalty Distributor: The enclosed check represents a share of the net settlement proceeds in the Class Action *Chieftain Royalty Company and Jack Lancet v. QEP Energy Company,* Case No. CIV-11-212-R in United States District Court for Western District of Oklahoma. You are receiving this notice and check because: (l) you have been identified as a Class Member in this action, or (2) you are the designated royalty distributor pursuant to the Production Revenue Standards Act of a well you operate in which QEP Energy Company ("QEP"), or a predecessor or assignor of QEP, currently and/or in prior periods, marketed its own gas. If you are not legally entitled to the proceeds identified on the check apron, the Court has entered an Order that requires you to pay these proceeds to persons legally entitled thereto or return this check uncashed to the remitter of it. If you are a designated royalty distributor, you are required to pay these proceeds to the current royalty owners in each of the wells identified on the check detail, and a copy of this notice should be included with the payment to each of the royalty owners.

> The distribution described above to Class Members is based on the assumption that very few sales of royalty interests have occurred. It has also been assumed that where sales did occur, it was the intent of the parties that the buyer was entitled to

receive payment for past claims. Finally, it has been assumed that where royalty interests passed through inheritance, devise or interfamily transfers, that it was the intent that the heir, or devisee or transferee also receive payment for past claims. To the extent that these assumptions are not correct in relation to particular transfers of interest, the Court has ordered that the Class Member who receives payment shall in turn make payment to the proper party or return this check uncashed to the remitter of it.

The person to whom this check was originally made payable, and anyone to whom the check has been assigned by that person, is deemed to have accepted this payment pursuant to the terms of the Stipulation and Agreement of Settlement, Notice of Settlement, and Final Approval Order related thereto, which releases, *inter alia,* QEP and its past and present parents, affiliates, directors, officers, employees, attorneys, agents, consultants, servants, stockholders, representatives, subsidiaries, predecessor entities, and affiliated successor entities (but not entities to which QEP assigned interests in Class Wells as to any claims occurring or arising after the Claim Period(s) for any well(s) sold to any such entity) from any and all Released Claims as defined in the Stipulation and Agreement of Settlement. Pursuant to the Order of the Court, it is the duty of the payee of the check to ensure that the funds are paid to the Class Member(s) entitled to the funds, and the release by Class Member(s) entitled to the funds shall be effective regardless of whether such Class Member(s) receive some, all, or none of the proceeds paid to a payee of a settlement check.

This check shall be null and void if not endorsed and negotiated within ninety (90) days of its date. The release of claims provided in the Settlement shall be effective regardless of whether this check is cashed.

iv.     Returned or stale-dated Distribution Checks shall be reissued as necessary to ensure delivery to the appropriate Class Members by QEP or the Settlement Administrator using commercially reasonable methods subject to review and approval by Class Counsel.  To the extent that Class

Members cannot be located, after all commercially reasonable efforts have been expended, the portion of the Net Settlement Fund attributable to them will remain in the Escrow Account for at least one year from the date that the Settlement becomes Final.  Thereafter, such remaining funds will be considered to be residual unclaimed funds which shall first be used to reimburse QEP for out-of-pocket costs incurred for Administration Notice and Distribution upon Court approval, with any remainder of such funds being paid pursuant to the provisions of paragraph 6.13 of the Stipulation.

v.     Once the appeal time on this Order has run, QEP or the Settlement Administrator will make prompt distribution of Net Settlement Funds to the persons ordered by the Court to receive those funds and QEP shall bear all Administration, Notice and Distribution Costs.  Subject to Paragraphs 11(b)(ix) and 14 of this Order, to the extent that any part of the Net Settlement Fund becomes subject to the escheat statutes of various states, QEP or the Settlement Administrator will make payment to the appropriate government body upon Court approval. QEP is authorized to employ the services of the Settlement Administrator to perform the distributions.  QEP or the Settlement Administrator will make a diligent effort to make the first distributions within 90 days of the Settlement becoming Final and complete the distributions within 180 days to Class Members representing at least 90% of the Net Settlement Fund.  The remainder of the Net Settlement Fund will be distributed within one year of

26

the Settlement becoming Final.  Any portion of the Net Settlement Fund remaining in the Escrow Account thereafter will be considered to be residual or unclaimed funds.

vi.      If after using reasonable efforts the Settling Parties and the Settlement Administrator are unable to identify the individual Class Members in a particular Class Well within one year after the Settlement is Final, the portion of the Net Settlement Fund allocated to such well will be subject to reimbursement of QEP's out-of-pocket costs as described in paragraph 1.1 of the Stipulation and Agreement of Settlement.

vii.    QEP, QEP's counsel, Class Counsel and Class Representatives shall have no liability to any Class Member for mis-payments, over-payments, or under-payments.  If any Class Member has been paid any portion of the Net Settlement Fund for any period of time for which that Class Member was not entitled to receive that payment, and some other person or entity who owned or claims to have owned the minerals during that time asserts a claim against any Released Party for payment of all or a portion of the settlement proceeds, or asserts a claim for an alleged underpayment of the royalty share or mineral owner's share of such production that is based on a Released Claim, then the Class Member who received an amount in excess of his share shall be liable for the payment of the amount he was overpaid to the person who is determined to have been properly owed that amount, and that Class Member shall

indemnify any Released Party, QEP's Counsel, Class Counsel and other Class Members or any party to the Stipulation against whom a claim is made, but only to the extent of any overpayment received by the indemnifying Class Member and interest thereon.

viii.    Upon completion of the distribution (including any necessary supplemental distributions) to the Class Members and, upon compliance with the Court's order(s) in furtherance of this Settlement, the Settling Parties, Class Counsel, QEP's Counsel, and the Settlement Administrator will have satisfied all obligations relating to the payment and distribution of the Net Settlement Fund.   Subject to paragraph 1.1 of the Stipulation concerning reimbursement of Notice and Administration Costs, the remaining monies in the Settlement Fund will be turned over to Class Counsel for further administration and handling pursuant to this Order.

ix.    Any residual funds remaining in the Escrow Account after distribution has otherwise been completed, and QEP has been reimbursed for out of pocket Administration, Notice, and Distribution Costs, as provided for elsewhere herein, and for which further distribution is not economically viable, shall pursuant to this Order be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) recommended by Class Counsel, preference to be given to organizations who provide beneficial services regarding Oklahoma royalty owners.

x.    The Court shall retain jurisdiction to determine any issues relating to the payment and distribution of the Settlement Proceeds, and any claims relating thereto shall be determined by the Court alone, and shall be limited to a determination of the claimant's entitlement to any portion of the Net Settlement Fund, and no consequential, punitive or other damages shall be awarded in any proceeding regarding any such determination.

xi.    The Mutual Release, Dismissal and Covenant Not To Sue provided in Section 4 of the Stipulation and hereby made an Order of this Court shall be effective as provided in the Stipulation, regardless of whether or not particular members of the Class did or did not receive payment from the Net Settlement Fund amount and regardless of whether or not any Class Member who was obligated pursuant to this Order (which is the Judgment as defined in the Stipulation) to pay some or all of the distributed funds to another Class Member in fact made such payment to such other Class Member.  The failure of a Class Member to make payment to another Class Member pursuant to the payment obligations of this Order shall not be a defense to enforcement of the Release of the Released Claims against the Released Parties or the Covenant Not To Sue in Section 4 of the Stipulation, as to any Class Member.

c.    **Cooperation in Implementing the Plan of Allocation.**    QEP, QEP's Counsel, Class Counsel, and Class Representatives have and shall continue to reasonably cooperate to facilitate the implementation of the Plan of Allocation

in this Order.  QEP, QEP's Counsel, Class Counsel, and Class Representatives shall have no liability to the Class, or any Class Member, for errors or omissions contained in the allocations or distributions if done in compliance with orders of the Court directing such allocation and distribution. Neither QEP, QEP's counsel, Class Counsel, Class Representatives, nor any Class Member shall have any liability for loss of any portion of the Settlement Fund Account under any circumstances, except in the case of willful and intentional malfeasance of a dishonest nature directly causing such loss.

12.     By agreeing to settle the Litigation, QEP does not admit, and specifically denies, any and all liability to the Class, Class Representatives and Class Counsel.

13.     The Court finds that on February 25, 2013, within ten days (extended to Monday by the weekend) of submitting the Settlement for preliminary approval on February 13, QEP caused notice of the Settlement to be served on the appropriate state official for all fifty states and District of Columbia, and on the appropriate federal official, as required by and in conformance with the form and content requirements of 28 U.S.C. § 1715.  In connection therewith, the Court has determined that under 28 U.S.C. 28 § 1715, the appropriate state official for each state in which a Class Member resides was and is the State Attorney General for each such state, and the appropriate federal official was and is the Attorney General of the United States.  Further, the Court finds it was not feasible for QEP to include on each such notice the names of each of the Class Members who reside in each state and the estimated proportionate share of each such Class Members to the entire Settlement as provided in 28 U.S.C. § 1715(b)(7)(A);

therefore, each notice included a reasonable estimate of the number of Class Members residing in each state and the estimated proportionate share of such Class Members. No appropriate state or federal official has entered an appearance or filed an objection to the entry of final approval of the Settlement.  Thus, the Court finds that all requirements of 28 U.S.C. § 1715 have been met and complied with and, as a consequence, no Class Member may refuse to comply with or choose not to be bound by the Settlement and this Court's Orders in furtherance thereof, including this Final Approval Order, under the provisions of 28 U.S.C. § 1715.

14.     The Action and the Complaint and all claims included therein, as well as all Released Claims, which the Court finds were filed against QEP in good faith by Class Representatives and Class Counsel in accordance with Federal Rule of Civil Procedure 11, are dismissed with prejudice as to the Released Parties.  All Class Members who have not validly and timely submitted a Request for Exclusion to the Settlement Administrator as directed in the Notice and Preliminary Approval Order, on behalf of themselves and their respective predecessors, successors, and assigns, are hereby deemed to have finally, fully, and forever released, relinquished, and discharged all of the Released Claims against QEP and the Released Parties and are barred and permanently enjoined from prosecuting, commencing, or continuing any of the Released Claims against the Released Parties.  The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation, this Final Approval Order, or the Court's other Orders.  The Court orders that QEP shall be allowed to recoup out-of-pocket costs incurred for Administration, Notice and Distribution pursuant to paragraph 1.1 of the

Stipulation out of residual or unclaimed funds that remain unclaimed in the Escrow Account one year after this Final Approval Order becomes final and reasonable attempts to locate and pay Class Members have been exhausted upon further order of the Court. Class Counsel shall be reimbursed from the Settlement Cash Amount in accordance with Paragraph 1.1.8 of the Stipulation.  Any reimbursement of Litigation Expenses shall be reimbursed in accordance with the Court's separate Order pertaining to attorneys' fees and Litigation Expenses.

15.     The Court orders that certain documents designated as confidential by any party pursuant to the Protective Order in the Litigation shall be returned to the producing party in accordance with the Protective Order and the terms of the Settlement Agreement.

16.     The Court also approves the efforts of Settlement Administrator, Rust Consulting, Inc., and Escrow Agent, Wells Fargo, N.A., and directs them to continue to assist the Settling Parties in completing the administration and distribution of the Settlement in accordance with the Stipulation, this Final Approval Order, and the Court's other Orders.

17.     Notwithstanding the foregoing paragraphs, nothing in this Final Approval Order shall bar any action or claim by any of the Settling Parties to enforce or effectuate the terms of the Stipulation or this Final Approval Order.

18.     This Final Approval Order and the Stipulation—including any provisions contained in or exhibits attached to the Stipulation; any negotiations, statements, or proceedings in connection therewith; or any action undertaken pursuant thereto—shall not be admissible in any action or proceeding for any reason, other than an action to

enforce the terms of this Final Approval Order or the Stipulation or to defend or bring an action based on the Release provided herein, and are not and shall not be deemed, described, or construed to be or offered or received as evidence of a presumption, concession, declaration, or admission by any person or entity of the truth of any fact alleged in the Action; the validity or invalidity of any claim or defense that was, could have been, or might be asserted; the amount of damages, if any, that would have been recoverable in the Action; or any liability, negligence, fault, or wrongdoing of any person or entity.

19.    The Court finds that the Settling Parties and their counsel have complied with the requirements of Federal Rule of Civil Procedure 11 as to all proceedings and filings in this Action and that Class Representatives and Class Counsel at all times acted in the best interest of the Class and had a good faith basis to bring, maintain, and prosecute this Action.  The Court further finds that the Class Representatives and Class Counsel adequately represented the Class in entering into and implementing the Settlement.

20.    No Class Member shall have any claim against Class Counsel, the Released Parties, the Settlement Administrator, the Escrow Agent, or any other agent designated by Class Counsel based on the distributions made substantially in accordance with the Stipulation, the Court's Plan of Allocation and Distribution Order, or other Orders of the Court.

21.    Neither Class Counsel, Class Representatives, QEP, nor QEP's counsel shall have, as the case may be, any responsibility for, interest in, or liability with respect

to: (i) the design, administration, or implementation of the Plan of Allocation and Distribution; (ii) the determination or administration of taxes; (iii) any act, omission, or determination of Class Counsel, the Escrow Agent, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (iv) the management, investment, or distribution of the Gross Settlement Fund or Net Settlement Fund; (v) the determination, administration, calculation, or distribution of the Gross Settlement Fund or Net Settlement Fund; (vi) the administration of the Escrow Account; (vii) any losses suffered by, or fluctuations in the value of, the Escrow Account, the Gross Settlement Fund, or the Net Settlement Fund; (viii) the payment or withholding of any taxes, expenses, or costs incurred in connection with the taxation of the Gross Settlement Fund or the Net Settlement Fund or the filing of any tax returns; or (ix) any expenses, costs, or losses incurred in connection with any of the above, except for the those expenses and costs expressly provided for in the Stipulation.

22.    No Class Member shall have any claim against Class Counsel, Class Representatives, QEP, or its counsel with respect to: (i) any act, omission, or determination of, the Escrow Agent, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of Gross Settlement Fund or the Net Settlement Fund; (iii) the determination, administration, calculation, or distribution of the Net Settlement Fund; (iv) the administration of the Escrow Account; (v) any losses suffered by, or fluctuations in the value of, the Escrow Account, the Gross

Settlement Fund, or the Net Settlement Fund; (vi) the payment or withholding of any taxes, expenses, or costs incurred in connection with the taxation of the Gross Settlement Fund or the Net Settlement Fund or the filing of any tax returns.

23.     Any order approving or modifying the Plan of Allocation, the application by Class Counsel for an award of attorneys' fees or reimbursement of Litigation Expenses, or any request of Class Representatives for Case Contribution Awards or reimbursement of reasonable costs and expenses shall not disturb or affect the Finality of this Final Approval Order, the Stipulation, or the Settlement contained therein.

24.     Without affecting the Finality of this Final Approval Order in any way, the Court reserves exclusive and continuing jurisdiction over the Action, Class Representatives, the Class Members, and QEP, and any other Released Parties for the purposes of: (i) supervising the implementation, enforcement, construction, and interpretation of the Stipulation, the Plan of Allocation and Distribution, and this Final Approval Order; (ii) hearing and determining any application by Class Counsel for an award of attorneys' fees, costs, and Litigation Expenses and/or Case Contribution Awards for Class Representatives, if such determinations were not made at the Final Fairness Hearing; (iii) supervising the distribution of the Net Settlement Fund; and (iv) resolving any dispute regarding a party's right to terminate the Settlement pursuant to the Stipulation.

25.     In the event the Settlement is terminated as the result of a successful appeal of this Final Approval Order or does not become Final in accordance with the terms of the Stipulation for any reason whatsoever, then this Final Approval Order shall be

rendered null and void and shall be vacated to the extent provided by and in accordance with the Stipulation, including with respect to the repayment by Class Counsel of attorneys' fees and costs that are awarded by the Court, and, in such an event, all orders entered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

26.     Subject to the arbitration provisions of the Stipulation, in the event that, prior to the Effective Date, Class Representatives or QEP institutes any legal action against the other to enforce any provision of the Stipulation or this Final Approval Order or to declare rights or obligations thereunder, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs incurred in connection with any such action.

27.     This Action and the Released Claims asserted in this Action are hereby DISMISSED WITH PREJUDICE to the refiling of the same or any portion thereof by or against the Released Parties.  The Court retains jurisdiction to administer the Settlement distribution process as contemplated herein and to issue additional Orders pertaining to, *inter alia*, Class Counsel's request for attorneys' fees and reimbursement of reasonable Litigation Expenses and Class Representatives request for a Case Contribution Award. Notwithstanding the Court's jurisdiction to issue additional Orders in this Action, this Final Approval Order fully disposes of all claims and parties and is, therefore, a Final appealable Judgment.

28.     All objections to the Settlement are hereby overruled.

29.     There is no reason for delay in the entry of this Final Approval Order and immediate entry by the Clerk of the Court is directed pursuant to Federal Rule of Civil Procedure 54(b).

30.     Further, to the extent any objector attempts to file an appeal as to this Order, such objection shall be severed for purposes of appeal and an appropriate cash bond shall be posted, pursuant to paragraphs 10.1 and 10.2 of the Stipulation, to which there were no objections.

IT IS SO ORDERED this 31st day of May, 2013.


_David L. Russell_

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
|---|
| OXY USA INC |
| XTO Energy Inc, and all subsidiaries and predecessors: |
| Thomas C. Mueller of Crawford County, Inc., Thomas C. Mueller, Limted |
| Harley Jones |
| Halpin Cobb & Morey |
| Cynthia Weldon |
| Cynthia Weldon |
| Leona Stephens |
| Bertha Dotson |
| Mary Lippmann |
| Walter Powers |
| Gilbert Tompson - President G C T Inc |
| Francis McCaffrey |
| Sheridan Holding Company I, LLC, Sheridan Production Parners I-A LP, Sheridan Production Partners I-M, LP and Sheridan Production Partners I-B LP |
| Jordan Rackerby |
| Jerry Whitt |
| Lois Sirmans |
| Hyla Kesey |
| Jeanne Deschamps |
| Chaparral Energy Inc |

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
|---|
| Myra Ward |
| Guard Explortation Limitied Partnership |
| Ward Petroleum Corp |
| Arnold Oil Properties LLC |
| Arnold Oil Properties Inc |
| Stephen Covington |
| Jack Halliburton |
| Stanley Singer |
| JEC Operating LLC |
| Johnson Exploration Company |
| Billy Bass |
| Sandra Watkins |
| Lena Latham |
| Anna Latham Bishop |
| Anking Consulting LLC |
| Christine Butler |
| Fern Irwin |
| Paul White III |
| Irene Randall |
| Wreka Murphy |
| Leola Bass |
| Nancy Ashcraft |

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
| --- |
| Pegasus Royalty Co |
| Harry Havenstrite |
| Nona Holmes |
| Kathryn Robinson |
| Stuart Burchett |
| Edward H Smith III, Trustee of Edward H Smith Jr. Deceased |
| W C Pesterfield |
| Wayne Wiesen  on behalf of Citation 2004 Investments Limited |
| Wayne Wiesen on behalf of Citation 2002 Investments Limited |
| Linda Morgan |
| V & C Farms LLC |
| Dorothy Faber |
| Doris Smith |
| Joy Martin |
| Keith & Patsy Dowdell |
| V & C Farms LLC |
| Stewart Nutter |
| Linn Operating Inc. |
| Southwest Royalties |
| JMA Energy Company |
| JMA Resources Inc |
| Tower Royality Company LLC |

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
| --- |
| Henry Wolf Jr |
| JMA Energy Company |
| Daniel Gossert |
| Henry Hailburton |
| Thomas P Lyle Jr |
| Larry G Cladwell Estate |
| John T Davis Jr |
| Union Pacific Oil & Gas |
| Oryx Energy Company |
| Union Pacific Oil & Gas Co |
| Union Pacific Resources Corp |
| Kerr McGee Oil & Gas Onshore LLC |
| Kerr McGee Corporation |
| Sun Exploration & Prod Corp |
| Kerr McGee Oil & Gas Onshore LP |
| APX Corporation |
| Sun Operating LTD Prtnshp |
| Kaiser Francis Oil Co |
| Veora Anderson |
| Burlington Resources Oil & Gas Co LP |
| Robert S Rizley |
| Roberta L Nightingale |

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
| --- |
| Osborn Heirs Company |
| The Paschal Family Trust |
| Major Jack Schnurr |
| Vivian R Leonhardt |
| B&G OPERATING LTD |
| GEORGE &THELMA HEMPHILL FAM TR |
| INMAN FAM TR BELL BENSON TTEE |
| HYLA W KESEY FAMILY TR |
| CHARLENE WRIGHT |
| BILL D MABERRY |
| BILL D MABERRY |
| BETTY J COLLET |
| MKB TRUST |
| MERIT ENERGY PARTNERS III LP |
| JOAN MEETING |
| MARGARET R INMAN |
| LESHA CALDON |
| Bertha Dotson |
| Guard Explortation Limitied Partnership |
| Sonja D. Ludwig |
| BETTY J COLLET |
| Lois McVay |

## Exclusion Requests
## Chieftain Royalty Company v QEP Energy Company

| Claimant Name |
|---|
| Caroline Reames Tolbert |
| J. Lynn Pruet |
| M. Leanne Rigsby |
| E. Dianne Greye |
| Brenda K. McCarty |
| Ward Petroleum Corp |
| Bill Loury |
| Kerry W. Caywood |
| Kerry W Caywood, Personal Rep of the Esta of Tillman W Fipps, Deceased |
| Michael K. Bohlman, Trustee for Donna Jean Caywood |
| James A. Caywood & Cleta F. Caywood |
| Marc O. Fox & Connie E. Fox |
| John Smallwood & Linsi Smallwood |
| Jack B. Searle, Tamara D. Searle & OGI, Inc. |
| Corinne L Rice |
| Stuart Burchett |
| Dan Schooley |
| Dave Burchett |
| Devon Energy Production LP and its parents, subsidiaries, affiliates, predecessors & successors |
| JMA Energy Company, JMA Resources, IBEX, Arapaho Land, Jeffrey J. McDougall, Leedey Acquisition, Tower Royalty |
| Leroy Williams |
| Mark A. Wolfe |

**Exclusion Requests**
**Chieftain Royalty Company v QEP Energy Company**

| Claimant Name |
| --- |
| Merit Energy Company, MERIT ENERGY PARTNERS III LP & all other Merit entities |
| Myra Ward Revocable Trust |
| Noble Energy Inc, as s successor to Samedan Oil Corporation, Patina Oklahoma Corp. & Patina Oil & Gas Corporation. |
| OXY USA INC |
| W A Moncrief Jr., Individually and  as Mgr of MONCRIEF OIL & GAS Master LLC |
| Alfred Stuart Burchett |
| |